This is a corrected version of the Memorandum and Order filed on February 9, 2007, that contained technical errors.



**SO ORDERED.**

**SIGNED this 22 day of February, 2007.**

_Dale L. Somers_
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>**CARL LEE JACKSON,**<br><br>       **DEBTOR.** | CASE NO. 05-15181<br>CHAPTER 7 |
| **CARL B. DAVIS, Trustee,**<br><br>       **PLAINTIFF,**<br><br>v.<br><br>**EMPRISE BANK and<br>CARL LEE JACKSON,**<br><br>       **DEFENDANTS.** | ADV. NO. 06-5101 |

**MEMORANDUM AND ORDER DENYING
COMPLAINT FOR AVOIDANCE OF NON-PERFECTED SECURITY INTEREST**

This is an action by the Chapter 7 Trustee to avoid a lien in a mobile home pursuant to 11 U.S.C. § 544[1] because it allegedly was unperfected on the date of filing. The Plaintiff Trustee, Carl B. Davis (hereafter "Trustee"), appears by Carl B. Davis, Davis & Jack, L.L.C. Defendant, Emprise Bank (hereafter "Emprise"), appears by Karl R. Swartz, Morris, Laing, Evans, Brock & Kennedy, Chartered. Defendant Debtor, Carl Lee Jackson (hereafter "Debtor"), does not appear. The Court has jurisdiction.[2]

The Trustee's Complaint for Avoidance of Non-Perfected Security Interest concerns a lien claimed by Emprise in Debtor's 1995 Champion Mobile Home (hereafter the "Mobile Home"), which is located on Debtor's exempt homestead property in LaHarpe, Kansas. The Trustee alleges the lien is unperfected because, due to transfers and refinancings of the initial purchase money loan, Emprise is not entitled to rely upon the Notice of Security Interest prepared and filed by the initial lender. Emprise asserts that its interest is perfected. The parties have submitted a Joint Stipulation of Facts, supported by attached copies of loan documents, and submitted briefs on lien perfection and related issues. The Court, having considered these matters, is now ready to rule and, for the reasons stated below, finds the lien perfected and unavoidable.

---

[1] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A complaint to avoid a lien is a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(K). There is no objection to venue or jurisdiction over the parties.

**FINDINGS OF FACT.**

As its findings of fact, the Court adopts the parties' stipulation, that is summarized as follows. On December 29, 1994, Debtor and his wife obtained a purchase money loan in the amount of $30,468.00 from Humboldt National Bank (hereafter "Humboldt") for the acquisition of the Mobile Home. The home was delivered to Debtor and is located on his homestead property. The note provided for 35 regular monthly payments and a final balloon payment of $27,721.43 due on January 4, 1998. The note was secured by a real estate mortgage[3] on the homestead property, including all "appurtenances and all the estate, title and interest" of the Debtor and his wife in the described premises. The mortgage was filed of record with the Register of Deeds of Allen County on January 12, 1995, and a Notice of Security Interest (NOSI), describing the Mobile Home and showing the name and address of Humboldt as the secured party and of the Debtor, was properly completed and mailed or delivered to the Kansas Division of Motor Vehicles on December 29, 1994.

On February 5, 1998, Debtor refinanced with Humboldt the balloon payment which became due for the 1994 loan. The new note was in the amount of $27,598 and provided for 60 monthly payments and a balloon of $16,581.45 due on February 4, 2003. It stated the purpose is a loan for "renewal of primary residence" and provided it is secured by the mortgage dated December 29, 1994.[4] On June 7, 1999, Debtor executed an extension agreement with First

---

[3] The stipulation states that a copy of a security agreement is attached, but the Court finds the mortgage and NOSI, but not a security agreement.

[4] The February 5, 1998 note form also included a security agreement portion, but no collateral was described.

Commercial Bank, f/k/a/ Humboldt National Bank that specified the next payment date and extended the maturity of the February 5, 1998 note from February 4, 2003 to March 30, 2003.

By succession or mergers and/or name changes, First Commercial Bank became Enterprise Bank. Effective April 4, 2003, Emprise acquired the February 5, 1998 note, as extended, from Enterprise Bank. The Assignment and Assumption of Loans agreement between Enterprise and Emprise provided, in part:

> Seller [Enterprise] hereby grants, assigns, sells and conveys unto Buyer [Emprise] the Loans [including those described on exhibit A] together with all of Seller's right, title, interest and estate in, to and under (i) the indebtedness represented or evidenced thereby and all monies now owing or accrued or that may hereafter become due or owing in respect thereof; (ii) all powers, covenants, liens, claims, or encumbrances held by or benefiting [sic] Seller in connection therewith; (iii) all notes, security agreements, control agreements, chattel paper, mortgages, hypothecation agreements, pledge agreements, assignments, pledged collateral, title insurance policies, financing statements and other collateral or loan documents that evidence, secure, insure, protect or otherwise relate in any way to the Loans (collectively the "Loan Documents");

The February 5, 1998 note is described on Exhibit A.

On March 30, 2003, the balloon payment on the extended February 5, 1998 note became due. On May 19, 2003, Debtor executed and delivered to Emprise a promissory note for $15,968.65. The proceeds from the May 2003 note satisfied the balloon due on the extension of the 1998 note. The 2003 note states it is secured by the Real Estate Mortgage dated December 29, 1994 and a security agreement dated May 19, 2003. The security agreement describes the collateral as the Mobile Home. Emprise Bank filed a UCC-1 with the Register of Deeds of Allen County but did not file a NOSI with the Division of Motor Vehicles of the Kansas Department of Revenue or a real estate mortgage. The real estate mortgage recorded by Humboldt on January

4

12, 1995 has not been released or satisfied and continues to be of record in the Register of Deeds office as the first mortgage.

Debtor never filed an Application for Registration of the Mobile Home with the Division of Motor Vehicles, and the Division of Motor Vehicles has never issued a Certificate of Title for the Mobile Home. Neither the title nor the requirement to issue a title to the Mobile Home has been eliminated under the procedure described in K.S.A. 58-4214(b).

Debtor filed for relief under Chapter 7 on August 20, 2005. He claimed the real property on which the Mobil Home is located as his homestead, stating a value of $15,000 and subject to a lien of $10,079 in favor of Emprise. No objections were filed. The Debtor's homestead is exempt. The Allen County Appraiser has established the value of the land at $630.00 and the Mobile Home at $21,000 for ad valorem real property tax purposes. Emprise Bank filed a proof of claim for $9,637.57.

The Trustee filed this lien avoidance action on February 3, 2006. An agreed order was entered providing as follows: Debtor would continue to make payments directly to Emprise; Emprise would account to the Court for all post-petition payments; Emprise was permitted to apply all post-petition payments to the debt on a conditional basis, pending resolution of the adversary proceeding; and, in the event of a final decision avoiding Emprise's lien on the Mobile Home, Emprise would promptly turn over to the Trustee the payments to which he is entitled under the Court's order. Since the date of filing, Debtor has continued to make his monthly payments to Emprise.

**ANALYSIS.**

    **A. Nature of the Controversy.**

Trustee seeks to avoid Emprise's lien on the Mobile Home pursuant to § 544(a)(2), which provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of . . .
>                          \*\*\*
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists;

Controlling law is succinctly stated by the Tenth Circuit as follows:

> Section 544(a) of the Bankruptcy Code "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date bankruptcy petition is filed." *Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531, 1532 (10th Cir. 1987). Consequently, "[s]ection 544(a) allows the trustee to avoid any unperfected liens on property belonging to the bankruptcy estate." *Id.* The determination of whether a creditor's security interest is unperfected, and therefore avoidable under section 544(a) is controlled by state law. *Id.* at 1533.[5]

A lien creditor, as defined by Kansas law, includes a "creditor that has acquired a lien on the property involved by attachment, levy, or the like" and "a trustee in bankruptcy from the date of the filing of the petition."[6] Article 9 of the Kansas UCC provides a security interest is

---

[5] *Morris v. CIT Group/Equipment Financing, Inc. (In re Charles)*, 323 F.3d 841, 842-43 (10th Cir. 2003).

[6] K.S.A. 2005 Supp. 84–9–102(52).

6

subordinate to the rights of a person that becomes a lien creditor before the security interest is perfected.[7]

In this case, therefore, the right of the Trustee to avoid Emprise's lien on the Mobile Home[8] is determined by whether the bank had a lien on the home securing the May 2003 note on the date of filing, August 20, 2005, and, if so, whether that lien was perfected. The parties agree Emprise had a lien. The determinative issue is therefore whether that lien was perfected. Emprise contends that the NOSI prepared and filed by Humboldt perfects its lien. The Trustee contends that after the refinancings, change of creditors, and passage of time, the NOSI is no longer effective.

Perfection of most security interests is governed by the Kansas version of Article 9 of the Uniform Commercial Code. The filing of a financing statement perfects a lien in most personal property. However, as to property subject to the certificate of title laws of Kansas, "the filing of a financing statement is not necessary or effective to perfect a security interest."[9] Prior to 1991, the exclusive means for perfection of a lien in a mobile home was pursuant to the certificate of title laws applicable to vehicles.[10] In 1991, the Kansas legislature enacted the Kansas

---

[7] K.S.A. 2005 Supp. 84–9–317(a).

[8] The parties agree that on the date of filing Emprise had a perfected mortgage on the homestead real property, and the Trustee does not seek to avoid that interest. The Trustee seeks to avoid only the alleged lien on the Mobile Home.

[9] K.S.A. 2005 Supp. 84-9-311(a)(2). This was also the law prior to the enactment of revised Article 9 in 2000. K.S.A. 84-9-302 (3)(c) (Furse 1996) (providing a vehicle, except a vehicle held as inventory, subject to a statute which requires indication on a certificate of title can be perfected only by presentation for registration of the documents appropriate under such statute).

[10] *Beneficial Finance Co. of Kansas, Inc. v. Schroeder*, 12 Kan. App.2d 150, 737 P.2d 52 (1987) rev. denied July 16, 1987.

7

manufactured home act,[11] and it now provides the exclusive method for perfecting a lien in a mobile home.[12] The current subsection of Kansas manufactured housing act addressing perfection of purchase money liens in mobile homes provides:

> (g) Upon sale and delivery to the purchaser of every manufactured home or mobile home subject to a purchase money security interest, as provided for in article 9 of chapter 84 of the Kansas Statutes Annotated, and amendments thereto, the dealer or secured party may complete a notice of security interest and, when so completed, the purchaser shall execute the notice, in a form prescribed by the director, describing the manufactured home or mobile home and showing the name and address of the secured party and of the debtor and such other information as the director may require. The dealer or secured party may, within 10 days of the sale and delivery, mail or deliver the notice of security interest, together with a fee of $2.50, to the division. The notice of security interest shall be retained by the division, until it receives an application for a certificate of title to the manufactured home or mobile home and a certificate of title is issued. The certificate of title shall indicate any security interest in the manufactured home or mobile home. Upon issuance of the certificate of title, the division shall mail or deliver confirmation of the receipt of the notice of security interest, the date the certificate of title is issued and the security interest indicated, to the secured party at the address shown on the notice of security interest. The proper completion and timely mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the manufactured home or mobile home described on the date of such mailing or delivery. [13]

---

[11] K.S.A. 1991 Supp. 58-4201, et seq.

[12] *Morris v. Trible (In re Trible)*, 290 B.R. 838 (Bankr. D. Kan. 2003).

[13] K.S.A. 58-4204(g) (Furse 2005).

8

The subsection has not been materially amended since its enactment in 1991.[14] If a loan is not for purchase money, the exclusive method of perfection is the notation of the lien on the certificate of title.[15]

The Trustee and Emprise agree that Humboldt's 1994 note for the purchase of the Mobile Home was secured by a perfected purchase money security interest in the Mobile Home. The parties have stipulated that the 1994 note was a purchase money note for acquisition of the Mobile Home, and the note states it is for purchase of the Mobile Home. The bank's mortgage granted it a lien in the described real property where the Mobile Home was installed, with all appurtenances.[16] The bank properly completed and mailed or otherwise delivered to the Kansas Division of Motor Vehicles a NOSI. A certificate of title was never issued, so the lien is not noted on a title to the Mobile Home.

The Court concludes, based upon the following analysis, that perfection of the lien continued when Humboldt refinanced the balloon in 1998, when the 1998 note was extended by First Commercial, when the 1998 note was acquired by Emprise, and when the balloon of the 1998 note was refinanced by Emprise. The Debtor's obligation never lost its character as a purchase money obligation, and the NOSI which perfected Humboldt's security interest in 1994 never lost it effectiveness.

---

[14] Compare K.S.A. 1991 Supp. 58-4204(e) with K.S.A. 58-4204(g) (Furse 2005).

[15] *In re Trible*, 290 B.R. at 843; K.S.A. 58-4204 (Furse 2005).

[16] The mortgage required the borrower to insure the improvements for $28,966.75, the amount of the purchase money loan for the Mobile Home.

9

Case 06-05101    Doc# 35    Filed 02/22/07    Page 9 of 18

**B. The Purchase Money Character of the Obligation was not Lost through Refinancings.**

The obligation of the Debtor never lost its purchase money character. A purchase money security interest was defined by Article 9 prior to the 2000 amendments as an interest "taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of the collateral if such value is in fact so used."[17] This version of Article 9 has been construed to mean that purchase money status is not lost when a loan is renewed or consolidated, unless a novation is intended.[18] Revised Article 9 in K.S.A. 84-9-103(f) similarly defines a purchase money security interest. Purchase money collateral is defined to mean goods that secure a purchase money obligation incurred with respect to that collateral.[19] A purchase money obligation is defined as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used."[20] Revised Article 9 expressly provides that a "purchase money security interest does not lose its status as such, even if . . . the purchase money obligation has been renewed, refinanced, consolidated, or restructured."[21]

Hence, if the 1998 and 2003 notes were refinancings or renewals of the balloon payment of the initial 1994 note, the purchase money status of the obligation continued as to the 2003

---

[17] K.S.A. 84-9-107(b) (Furse 1996).

[18] I*n re Gibson*, 16 B.R. 257, 264-269 (Bankr. D. Kan. 1981).

[19] K.S.A. 2005 Supp. 84-9-103(a)(1).

[20] K.S.A. 2005 Supp. 84-9-103(a)(2).

[21] K.S.A. 2005 Supp. 84-9-103(f)(3).

10

note held by Emprise. Notes are routinely paid by renewal or refinancing. Former Chief Judge Pusateri described the process as follows:

> Renewal of a note occurs as a regular business practice among sellers, finance companies and lending institutions. Briefly, the process involves an existing note that is "paid by renewal" or "flipped." The "new" or renewed note incorporates the balance still owing on the old note. Sometimes the renewal note merely extends the time of payment for the amount due on the old note. Other times a number of old notes are "consolidated" into one "new" note. Another practice is to renew an old note and give an additional cash advance in the renewal note, sometimes taking an additional security interest in new or different collateral. The variations are numerous, but in each instance, the paying of the old note by execution of a renewal note is generally just a bookkeeping procedure.[22]

Upon renewal, the lender is generally entitled to the same rights and remedies as available on the original note.[23]

The stipulated facts establish that the 2003 Emprise note was a refinancing or renewal of the 1994 Humboldt purchase money obligation. The proceeds of the 1994 note were used to purchase the Mobile Home. Each of the subsequent notes was merely a revised method for the payment of the original advancement, there were no additional funds distributed to the Debtor which could have been used for any other purpose. An advancement that is a purchase money obligation retains its status until the purchase price of the property is paid.[24]

---

[22] *In re Gibson*, 16 B.R. at 262.

[23] *Farmers Sate Bank of Oakley v. Cooper*, 227 Kan. 547, 608 P.2d 929 (1980).

[24] *See In re Gibson*, 16 B.R. at 264-269.

11

**C. The Change of Lenders did not cause the Purchase Money Status of the Obligation to be Lost**.

The change of lenders also did not cause the obligation to change status. There are two changes to consider. First it is stipulated that Humboldt became known as First Commercial Bank and then by a succession of mergers or name changes, First Commercial Bank became Enterprise Bank. The Trustee does not assert these changes impacted the status of the obligation. The second change is the acquisition by Emprise of the February 5, 1998 note with Humboldt, as extended in 1999 by Enterprise, as part of a transaction whereby Emprise acquired a book of loans from Enterprise. As quoted above, the Assignment and Assumption Agreement provided that Emprise succeeded to all rights of Enterprise Bank relating to the note, including all monies owed, all liens, and all loan documents. Nothing about the assignment changed the purchase money status.

**D. The 1994 NOSI was Effective in 2005.**

The December 1994 NOSI perfected the lien in the Mobile Home when the purchase money loan was originated. There has been no change in law concerning the method of perfection. Article 9, both before and after the adoption of the revised code, provides that the exclusive method of perfection is compliance with the applicable title law. Revised Article 9 provides for continuity of perfection as to security interests that were enforceable immediately prior to the effective date of the revision if applicable requirements for enforceability and perfection under Revised Article 9 were satisfied without any further action.[25] Here, because the purchase money lien was perfected by the NOSI prior to Revised Article 9 and perfection under

---

[25] K.S.A. 2005 Supp. 84-9-703(a).

Revised Article 9 was by NOSI, the change in law did not require the secured creditors to take any action for perfection to continue.

The applicable title statute was not materially amended between 1994 and the date of filing of the petition. It unambiguously provides that a NOSI will perfect a lien until the certificate of title is issued. The statute states: "The proper completion and mailing or delivery of a notice of security interest by a dealer or secured party shall perfect a security interest in the manufactured home or mobile home described on the date of such mailing or delivery." [26] It further requires the department to retain the NOSI "until it receives an application for a certificate of title to the manufactured home or mobile home and a certificate of title is issued."[27] There is no provision that places a time limit upon the effectiveness of the NOSI, other than the issuance of the certificate of title, and the parties stipulated that no title has been issued.[28] Although Article 9 places a time limit upon the effectiveness of a filed financing statement, those provisions do not apply when perfection is pursuant to title statutes. These title statutes govern duration and renewal of perfection.[29]

The assignment of the 1998 loan to Emprise did not cause the NOSI to become ineffective. As examined above, the obligation retained its purchase money status. The assignment provided that Emprise succeeded to all the rights of Enterprise in the 1998 note,

---

[26] K.S.A. 58-4204(g) (Furse 2005).

[27] *Id.*

[28] This fact distinguishes this case from *Morris v. Boeing Wichita Credit Union (In re Hicks)*, No. 03-16625; Adv. No. 04-5072 (Bankr. D. Kan. Sept. 14, 2005), rev'd on other grounds, 2006 WL 1764119 (D. Kan. June 27, 2006), where a NOSI was found ineffective because the certificate of title was issued without the notation of the lien.

[29] K.S.A. 2005 Supp. 84-9-311(c).

13

including all liens and loan documents. Under Kansas common law, an assignment passes all of the assignor's title and interest.[30] For example, Kansas has long held that the assignment of a note ordinarily operates as an assignment of a mortgage made to secure the note.[31] Under Revised Article 9, if a secured party assigns a perfected security interest, no filing is required to continue the perfected status against creditors of and transferees of the original debtor.[32] The provision applies to perfection under the title laws.[33] Because the 1998 note, as extended in 1999, was secured by a perfected lien in the Mobile Home when assigned to Emprise, the perfection continued for the benefit of the assignee. The 1994 NOSI remained effective when the bankruptcy was filed.

**E. The Refinancings of the Balloon Payments were not Novations.**

The Trustee contends that either when the balloon payment was refinanced by Humboldt in February 1998 or by Emprise in March 2003, the purchase money character of the loan ceased, so these subsequent notes were no longer perfected by the NOSI. The Trustee contends the 2003 note was not a renewal, refinancing, consolidation or restructuring of the purchase money obligation as contemplated by K.S.A. 84-9-103(f). He must therefore be contending that the 2003 note was a novation. Novation is the substitution of a new debt for an existing debt

---

[30] *Patrons State Bank & Trust Co. v. Shapiro*, 215 Kan. 856, 528 P.2d 1198 (1974); *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 774 P.2d 919 (1989).

[31] *Robinson v. Campbell*, 60 Kan. 60, 55 Pac. 276 (1898).

[32] K.S.A. 2005 Supp. 84-9-310(c) (effective July 1, 2001); see also K.S.A. 84-9-302(2) (Furse 1996).

[33] K.S.A. 2005 Supp. 84-9-310, Official Comment ¶ 4; K.S.A. 84-9-302 (Furse 1996), Official UCC Comment, ¶ 10.

which is thereby extinguished in a novation.[34] The controlling element is the intention of the parties, and absent a clear and definite intention on the part of all concerned to extinguish the old obligation by substituting a new one, there is no novation.[35] Under Kansas law, a novation is never presumed, and the burden is upon the party asserting a novation to establish its existence.[36]

The factual basis for the Trustee's position is the following: (1) In 2003, the balloon payment under the 1999 extension agreement became due; (2) the Debtor signed a new note and security agreement with Emprise extending the time of payment of the balloon; (3) the new security agreement did not state the loan was for purchase money; (4) the old Humboldt note was satisfied by the proceeds of the Emprise note; (5) the old Humboldt note and security agreement were cancelled and sent to the Debtor; and (6) Emprise is a different lender and entity than Humboldt. The Court finds these circumstances insufficient to evidence a novation.

First, the fact that the balloon was due does not evidence a novation. Consumer notes frequently have balloon payments, which are renewed or refinanced by the same lender without there being a novation. Second, the execution of a new note is required when there is a renewal, as well as when there is a novation. A new security agreement, even one pledging new collateral, is consistent with renewal or refinancing. As to Emprise, the new security agreement provided the bank with documentation for its records that linked the mortgage initially taken by Humboldt and the Mobile Home to the new note. Third, a new security agreement need not state that it is for a purchase money loan; whether an obligation is for purchase money is determined

---

[34] *Davenport v. Dickson*, 211 Kan. 306, 310, 507 P.2d 301 (1973).

[35] *Id.*

[36] *Id.*

15

by the facts of the transaction, not the agreement of the parties.  Fourth, the purpose of a renewal as well as a novation is to satisfy the obligation being renewed by the proceeds of the new note.  Fifth the stipulation of facts, which is the only evidence before the Court, does not state that an old Humboldt note or any security agreement were cancelled and sent to the Debtor.  Sixth, the fact that Emprise is a different entity than Humboldt is irrelevant since Emprise was assigned the Humboldt note and succeeded to all of the prior lender's rights and interests.  Emprise was the successor of Humboldt and Enterprise, so for purposes of considering whether the 2003 note was a renewal, refinancing, or novation, Emprise should be considered to be the same lender as those previously holding the obligation.

**F. Emprise has no Duty to Require the Issuance of a Title.**

The Trustee also contends the NOSI should be held ineffective to perfect the security interest because the lenders financing the balloons should have required or requested the issuance of a certificate of title.  He cites *In re Luke*,[37] a case where the trustee prevailed on his claim of lien avoidance against a creditor, unrelated to the initial lender, who refinanced a loan secured by a lien in a vehicle.  Unlike this case, a balloon was not refinanced by the initial lender or a lender related to the initial lender.  Rather, the unrelated new lender sent a check to the original lender and requested release of its lien and the initial perfection documents were not left in place.  The debtor filed his petition for relief before the lien was released, and the new lender's attempts to re-perfect were taken post-petition.  In holding for the trustee, the court reviewed the various actions the creditor should have taken to accomplish perfection.  The case has no applicability here.

---

[37] *In re Luke*, No. 03-14067; Adv. No. 03-5323 (Bankr. D. Kan. Nov. 18, 2004).

16

**G. Under the Facts Presented, the Availability of an Electronic Title does not Change the Court's Analysis.**

The Department of Revenue after January 1, 2003 was required by statute[38] to create and maintain electronic titles for mobile homes. In the Trustee's view, that electronic title for the Mobile Home should qualify as the issuance of a title for purposes of requiring a person acquiring a security interest in a mobile home subsequent to the issuance of the certificate of title to take steps to have its lien noted on a newly issued title. The Court rejects this argument. First, there is nothing in the stipulation indicating that an electronic title was created or, if it was, that the lien was omitted. Second, Judge Berger has recently rejected the reverse side of this argument as applied to motor vehicles.[39] He held that the statute providing for electronic titles[40] does not create an alternative means for perfection of a PMSI in a motor vehicle. This Court also finds that the addition of electronic titles does not change the statutory rule that a timely NOSI is effective to perfect a purchase money security interest in a mobile home until the certificate of title is applied for and issued.

**CONCLUSION.**

The Court therefore holds that the 2003 note, like the initial 1994 note, was a purchase money obligation, secured by a perfected security interest in the Mobile Home by virtue of the 1994 NOSI. Accordingly, the Trustee's complaint to avoid Emprise's lien is denied.

---

[38] K.S.A. 58-4204a.

[39] *Redmomd MHC Financial Services, Inc. v. MHC Financial Services, Inc. (In re Barker)*, No. 04-21434; Adv. No. 4-6132 (Jan. 9, 2007).

[40] K.S.A. 2005 Supp. 8-135d.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###